**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**EDDY STANLEY HARRIS, JR.**                                                **PETITIONER**

VS.                              **CASE NO. 4:09CV00276 SWW/HDY**

**LARRY NORRIS, Director of the
Arkansas Department of Correction**                                        **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

The amended petition for writ of habeas corpus (docket entry no. 33) of Eddy Stanley Harris, Jr., is before the Court.

Mr. Harris is serving two life sentences without parole following a 2005 jury trial in Pulaski County on the charges of two counts of capital murder. A direct appeal of the convictions was unsuccessful[1]. *Harris v. State*, 366 Ark. 190 (2006). Mr. Harris subsequently filed a motion for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, claiming eleven instances of ineffective assistance of counsel. He also filed an amended Rule 37 petition, adding another claim of ineffective assistance of counsel for failing to call witnesses and introduce documents that would have created reasonable doubt of his guilt. In December of 2006 the trial court denied some of the Rule 37 claims and directed that an evidentiary hearing be held on the remaining claims. The evidentiary hearing was held on July 30, 2007, and the trial court followed with an August 17, 2007, order denying Rule 37 relief. Mr. Harris appealed the trial court's decision, and the Arkansas Supreme Court affirmed the lower court. *Harris v. State*, No. CR 07-1247, 2008 WL 2789769 (Ark. June 26, 2008) (*per curiam*).

In April of 2009 Mr. Harris filed his petition for writ of habeas corpus with this Court. Mr. Harris was directed to return to state court to exhaust a possible state court remedy in the form of

---

[1] Mr. Harris raised three claims on direct appeal: (1) the trial court erred in refusing to suppress the pretrial identification of Harris by Jarvis McKeller; (2) the trial court erred when it denied Harris's motion in limine to prohibit witness Chandra Baksin from testifying; and (3) the trial court erred when it denied Harris's motion for directed verdict.

a petition for writ of error coram nobis. Mr. Harris requested the Arkansas Supreme Court reinvest the trial court with jurisdiction to consider a petition for writ of error coram nobis. On December 9, 2010, the Arkansas Supreme Court denied the petition. *Harris v. State*, 2010 Ark. 489, 2010 WL 5059552. Mr. Harris, having exhausted state court remedies, returns to this Court and advances the following claims for relief:

> 1.   The prosecution failed to disclose, despite timely requests, that witness Johilda Harris had been a paid informant for the Little Rock Police in numerous criminal investigations since 1990 and as late as February 2004 prior to Mr. Harris' trial in March 2005, and this concealment was prejudicial to the petitioner's defense as the prosecutor argued to the jury that Johilda Harris had not been paid nor had any expectation to be paid for her testimony;
>
> 2.   The December 9, 2010, decision of the Arkansas Supreme is contrary to or involved an unreasonable application of *Giglio v. United States*, 405 U.S. 150 (1972), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1942). According to Harris, these cases stand for the proposition that when the reliability of a witness may be determinative of guilt or innocence, the nondisclosure of evidence affecting the credibility of that witness justifies a new trial, irrespective of the good faith or bad faith of the prosecution; and
>
> 3.   The December 9, 2010, decision of the Arkansas Supreme is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Prior to addressing the claims of the petitioner, a review of the pertinent portions of the state court decisions is helpful. On direct appeal, the Arkansas Supreme Court considered the evidence supporting the convictions:

> On May 3, 2002, the Little Rock Police Department received a phone call about a shooting on West 12th Street. When officers arrived, they found the bodies of two victims, Craig Tedder and Brad Dison. Both victims had sustained multiple gunshot wounds. The police investigation revealed that Tedder and Dison had come to Little Rock from Jonesboro to recover a large sum of money they had advanced two weeks earlier in connection with an aborted drug transaction. The homicide investigation led by Detective Ronnie Smith eventually turned up information indicating that George Larue Hall and his cousin, Appellant Harris, were responsible for the double homicide.
>
> Thereafter, the police received a tip from an anonymous caller that George Hall and his cousin "E" were on the street bragging about a shooting. The caller was able to give police a home address for "E." Upon arriving at his home, the police discovered that "E" or "EJ" was Appellant Harris. Apparently, Hall was living with the appellant in Little Rock at the time of the murders.

The homicide investigation later revealed that Hall ran up to a parked vehicle after the shooting and asked the occupants, who were coincidentally smoking marijuana, for a ride. In fact, one of the occupants, Jarvis McKeller, testified that he heard the shots just before Hall appeared and started banging on the car window, begging for a ride. Hall even offered to pay the driver two-hundred dollars ($200) for a ride to the appellant's house, where he was living at the time. McKeller also testified that Hall had "spatters of blood" on his shirt and seemed a bit nervous and shaky. When they arrived at the appellant's house, Hall told them to get out of the vehicle and go inside. While inside the house, McKeller saw two other individuals besides Hall, and he later identified the appellant as being one of them. Furthermore, McKeller overheard a conversation between Hall and the appellant about "who got the money." Evidence was presented at trial that the victims had $25,000 cash in a Wal–Mart bag in the back of their vehicle.

Johilda Harris, the appellant's aunt, and her husband Michael Ford also testified that several weeks after the murders they overheard the appellant and his father discussing the murder. Specifically, Johilda Harris testified at trial that the appellant told her that he had "shot the white boy."

Chandra Baskin testified that several weeks prior to the shooting she overheard a conversation between the appellant and Hall about a robbery they were planning. In that conversation, Baskin stated Hall told the appellant that the robbery would take place in the alleyway off of 12th Street. She also heard Hall tell the appellant that he would be standing back in some bushes when the robbery took place. On May 3, 2002, the day of the murders, she and Hall spent the night at a motel. The next morning Hall left and came back with a newspaper article about the double murders. Later that day, Baskin went with Hall back to the appellant's house and then to the crime scene. She stated they stopped the car a few blocks from the location, and Hall got out of the car and jumped a fence. Within five minutes, he returned to the car and they drove to Fordyce. About two weeks later, Baskin overheard another conversation between the appellant and Hall in which the appellant asked Hall if he found the gun he had used. In that conversation, Baskin also heard the appellant ask whether the police could link them to the double homicide.

Finally, cell phone records linked Hall's cell phone to the victims' cell phone. Detective Smith testified that on the day of the murders Tedder called Hall at 11:33 a.m. Hall returned the call at 11:53 a.m. and made another call to Tedder at 11:55 a.m. Later that afternoon, Hall received a call from Tedder at 3:51 p.m., and within a few minutes, at approximately 4:05 p.m., Tedder and Dison were shot and killed.

The State charged the appellant with two counts of capital murder. Prior to trial, the appellant filed two motions in limine. The first motion requested that McKeller's pretrial identification of the appellant be suppressed on the ground that the identification procedure was unduly suggestive. In the second motion, the appellant sought to prohibit Chandra Baskin from testifying about a conversation she heard two weeks before the shooting in which Hall and the appellant talked about planning a robbery. The circuit court denied both motions, and the jury subsequently convicted the appellant of both counts of capital murder. From the judgment of conviction, he now brings this appeal.

For his final point on appeal, the appellant claims that the circuit court erred when it denied his motions for directed verdict. Because the appellant's claims, based on the denial of a directed verdict, implicate his right to be free from double jeopardy, we consider them first, although it is his third and final point on appeal. *Hamm v. State,* 365 Ark. 647, 232 S.W.3d 463 (2006). A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004). This court has long held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

The State charged the appellant with two counts of capital murder on the theory that he and Hall attempted to rob the victims, and in the course of doing so, killed both men. The relevant criminal statutes provide in pertinent part as follows:

A person commits capital murder if ... [a]cting alone or with one (1) or more other persons, he or she commits or attempts to commit ... robbery ..., and in the course of and in furtherance of the felony or in immediate flight therefrom, he or she or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life....

Ark.Code Ann. § 5–10–101(a)(1) (Repl.2006).

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

Ark.Code Ann. § 5–12–102(a) (Repl.2006). Aggravated robbery occurs when a person "commits robbery ... and he: (1) is armed with a deadly weapon ... or (2)[i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark.Code Ann. § 5–12–103(a) (Repl.2006).

In keeping with our standard of review, as well as the above-cited statutes, we must conclude that there is substantial evidence to support the appellant's conviction. As explained earlier, McKeller testified that on the day of the murder, after giving Hall a ride to the appellant's house, he overheard a conversation between Hall and the appellant about "who got the money." Evidence was presented at trial that the victims had $25,000 cash in a Wal–Mart bag in their vehicle. Moreover, Chandra Baskin testified that a couple of weeks prior to the shooting she overheard the appellant and Hall talk about a robbery they were planning. In that conversation, Hall indicated to the appellant that the robbery would take place in the alleyway off of 12th Street. Baskin also related that Hall told the appellant he would be standing back in some bushes when the robbery took place. Thus, the evidence clearly supports the jury's verdict that the appellant or his accomplice committed or attempted to commit robbery.

>    Furthermore, the appellant's aunt, Johilda Harris, and her husband, Michael Ford, testified that several weeks after the murders they overheard the appellant and his father talking about the murders. According to Johilda Harris, the appellant told her that he had "shot the white boy." Baskin confirmed that on May 3, 2002, she spent the night in a motel with Hall, and the next morning he left and came back with a newspaper article about the double murders. Later that day, she went with Hall back to the appellant's house and then to the crime scene, where Hall got out of the car and jumped a fence. About five minutes later, he got back in the car and they drove to Fordyce. Finally, about two weeks later, Baskin overheard another conversation between the appellant and Hall in which the appellant asked Hall if he found the gun he had used. In that conversation the appellant also asked whether the police could link them to the double homicide. In sum, the above evidence supports the jury's verdict that the appellant or a accomplice committed the murders of Tedder or Dison.
>
>    In the appellant's brief on this point, he essentially attempts to question the credibility of the State's witnesses. However, in conducting a sufficiency-of-the-evidence review, we view the evidence presented at the trial in the light most favorable to the State *and consider only the evidence that supports the verdict. Stone v. State, supra.* Accordingly, because there is substantial evidence that the appellant or an accomplice committed or attempted to commit robbery, and, in the course of doing so, that he or an accomplice caused the deaths of Dison or Tedder, we affirm the circuit court's rulings on the appellant's directed-verdict motions.

*Harris v. State*, 366 Ark. 190, 192-196 (2006).

Mr. Harris sought Rule 37 postconviction relief in state court, advancing numerous claims of ineffective assistance. Some of these claims relate to witness Johilda Harris. The Arkansas Supreme Court found as follows:

>    Appellant raises as ineffective assistance his trial counsel's failure to present any witnesses or effectively contest the State's case. Appellant did not receive a ruling as to that issue, as a separate issue, in the appealed order. An appellant has an obligation to obtain a ruling on any issue to be preserved for appeal. *See Howard v. State,* 367 Ark. 18, 238 S.W.3d 24 (2006); *Beshears v. State,* 340 Ark. 70, 8 S.W.3d 32 (2000). To the extent that some parts of that argument were addressed by the trial court in reference to the individual witnesses, those arguments are discussed in turn.
>
>    As to specific potential witnesses, appellant first contends that trial counsel should have called appellant's father and Keesha Epting to dispute the testimony of two key witnesses, Johilda Harris and her husband, Michael Ford, concerning statements about appellant's participation in the shootings. The trial court found that trial counsel had made strategic decisions not to call those witnesses and that no potential witness's testimony would have impeached Mr. Ford's testimony.

6

In an appeal from a trial court's denial of postconviction relief on a claim of ineffective assistance of counsel, the question presented is whether, under the standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and based on the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective. *Small v. State,* 371 Ark. 244, 264 S.W.3d 512 (2007) (per curiam). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

Under the *Strickland* test, a claimant must show that counsel's performance was deficient, and the claimant must also show that this deficient performance prejudiced his defense through a showing that petitioner was deprived of a fair trial. *Walker v. State,* 367 Ark. 523, 241 S.W.3d 734 (2006) (per curiam). A petitioner making this claim must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Harrison v. State,* 371 Ark. 474, 268 S.W.3d 324 (2007). In doing so, the claimant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* As to the second prong of the test, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Sparkman v. State,* ---Ark. ----, --- S. W.3d ---- (March 20, 2008). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Where the trial court has determined a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then a decision not to call a witness or challenge a statement may not be a proper basis for relief under Rule 37.1. *See Weatherford v. State,* 363 Ark. 579, 215 S.W.3d 642 (2005) (per curiam). The fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, itself, proof of counsel's ineffectiveness. *Rankin v. State,* 365 Ark. 255, 227 S.W.3d 924 (2006).

Here, Johilda Harris and Michael Ford testified at trial concerning conversations with appellant and his father in which appellant failed to deny, and later admitted, his involvement in the murders. At the hearing on the Rule 37.1 petition, appellant's father testified that he was available as a witness to refute that those conversations took place as Ms. Harris and Mr. Ford testified. Keesha Epting testified that she was called to court for the trial but did not testify, and could have provided an account concerning an occasion when Ms. Harris later recanted her statements to the police about the conversations.

Trial counsel testified that he discussed with appellant whether his father should testify, and made a decision not to call appellant's father because he had been arrested for threatening a witness, had some temper issues, and counsel did not believe that he would make a good witness. The trial court found that trial counsel did not put Ms. Epting on the stand as a matter of trial strategy because Ms. Epting was subpoenaed and counsel was aware of her potential testimony. The trial court reasoned that because Ms. Epting's testimony only concerned Ms. Harris's recanting her statement and did not impeach Mr. Ford's testimony, there was support for reasonable professional judgment as to the decision.

7

> Appellant argues that trial counsel could not have reasonably decided to forego presenting some counter to Ms. Harris's testimony. He contends that Mr. Ford's testimony was not as persuasive as Ms. Harris's because he only testified as to statements that he had heard spoken to his wife in his presence rather than what was said directly to him, and that by refuting Ms. Harris's testimony, Ms. Epting's testimony also refuted Mr. Ford's testimony.
>
> A proceeding on a Rule 37.1 petition does not provide a forum to debate trial tactics or strategy, even if the strategy proves improvident. *Id.* Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State,* 342 Ark. 35, 26 S.W.3d 123 (2000). Although another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Id.* The trial court did not clearly err in finding that the decision not to call Ms. Epting was a matter of strategy based upon reasonable professional judgment. Appellant's arguments challenge the prudence of counsel's decision, but are not sufficient to undercut the basis for the decision as reasonable professional judgment. While another attorney may have reached a different conclusion, counsel could have reasonably concluded Ms. Epting's testimony did not refute Mr. Ford's and was not of value. . . .
>
> Appellant next contends the trial court erred in determining that trial counsel was not ineffective for failure to call witnesses to impeach Ms. Harris by providing testimony as to her reputation for a lack of truthfulness. Appellant argues that counsel should have called appellant's father and Jackie Cobbs for such testimony. Appellant further contends that Ms. Cobbs could have provided alibi testimony.
>
> The trial court did not provide a ruling specifically as to Ms. Cobbs's testimony concerning Ms. Harris's veracity. Even if the trial court's findings as to other witnesses for that testimony were applicable, the ruling reflects the same reasonable basis for a tactical decision as in the previous discussion concerning counsel's failure to discredit Ms. Harris's testimony. Mr. Ford's testimony would have remained unchallenged. For the reasons previously discussed, we also agree with the trial court's finding that the decision not to call appellant's father was a matter of trial strategy. . .

*Harris v. State,* 2008 WL 2789769 (Ark., June 26, 2008).

Finally, the petitioner challenged the testimony of Johilda Harris in his petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. The Arkansas Supreme Court held:

> . . . Petitioner contends that the State withheld information concerning one of the

witnesses, Ms. Johilda Harris. Petitioner alleges that the information included an extensive criminal history, that Johilda worked as a paid informant for the police, and that Johilda was paid to testify against petitioner.

That petitioner alleges violations of the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is not alone sufficient to provide a basis for error coram nobis relief. To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *State v. Larimore,* 341 Ark. 397, 404, 17 S.W.3d 87, 91 (2000). In *Newman,* this court recognized that the cumulative effect of the suppressed evidence is considered to determine whether the allegedly suppressed evidence was material to the guilt or punishment of the individual. 2009 Ark. 539, --- S.W.3d ----.

Assuming that withheld evidence meets these threshold requirements and is both material and prejudicial, in order to justify issuance of the writ, the withheld material evidence must also be such as to have prevented rendition of the judgment had it been known at the time of trial. To merit relief, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Buckley,* 2010 Ark. 154.

In order to carry his burden to show that the writ is warranted, petitioner must demonstrate that, had the evidence that he alleges was withheld concerning Johilda been available, it would have been sufficient to have prevented rendition of the judgment. Johilda's testimony was simply not so critical to the prosecution's case, despite petitioner's characterization of her testimony as "key." As we noted in our opinion affirming denial of petitioner's Rule 37 .1 petition, Johilda's husband testified to much of the same information. In our opinion on direct appeal, we detailed substantial additional evidence linking petitioner and his accomplice to the murders, including testimony of discussions between petitioner and his accomplice planning the robbery, calls to the victim's phone, and petitioner's accomplice offering money for a ride away from the area at the time the murders occurred.

In determining if the proposed attack on the judgment is meritorious, this court looks to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Buckley,* 2010 Ark. 154. Petitioner asserts in his petition that there is a reasonable probability that he would not have been convicted if the alleged withheld material had been available. That allegation is dubious because the cumulative effect of the withheld materials would have discredited only Johilda's testimony, and Johilda's testimony was not crucial to the State's case.

*Harris v. State*, 2010 WL 5059552 (Ark. Dec. 9, 2010).

Having reviewed the state court proceedings, we now turn to the claims of Mr. Harris.

His first assertion is that the prosecution failed to disclose, despite timely requests, that witness Johilda Harris had been a paid informant for the Little Rock Police in numerous criminal investigations since 1990 and as late as February 2004 prior to Mr. Harris' trial in March 2005, and this concealment was prejudicial to the petitioner's defense as the prosecutor argued to the jury that Johilda Harris had not been paid nor had any expectation to be paid for her testimony. The Court has reviewed the trial transcript, as well as the transcript of the Rule 37 proceedings and the various rulings of the state courts. The evidence shows that Ms. Harris was indeed paid as an informant for the Little Rock Police Department from April 11, 1990, to April 14, 2005. Docket entry no. 12-2, pages 4-6. This information was not provided to the defense despite timely discovery requests. This information would have benefitted the defense in impugning Ms. Harris's motives. There is, however, no proof that Ms. Harris was promised payment or benefits for her testimony in this case. Witnesses were called at the Rule 37 hearing and provided the following testimony: Officer Larry Hastings, Crimestoppers coordinator since 1994, searched his records and found no evidence of any payment to Johilda Harris. Respondent's Exhibit I ("Ex. I"), page 254; Chief of Police Stuart Thomas testified that Johilda Harris was paid $1,000.00 in April of 2005, one month after the petitioner was tried. Ex. I 259. This was done pursuant to the recommendation of the lead investigator in petitioner's case, Detective Ronnie Smith. The money was paid from the Special Investigations Division Fund, rather than from the Crimestoppers fund. Ex. I 432; Detective Smith, in a memorandum written about three weeks after Harris' trial, recommended that Johilda Harris, along with three other witnesses, be compensated for their trouble. Ex. I, Defendant's Exhibit 1. Detective Smith testified at the Rule 37 hearing that he initiated the payment of Johilda Harris and that "she never asked me for a penny." Ex. I 432-3. In summary, the assertion that Johilda Harris was promised and received money in return for testifying against the petitioner is an assertion not supported by

the record[2].

While we find no evidence demonstrates Ms. Harris was paid for her testimony in this case prior to testifying, it remains that the prosecution failed to disclose that the witness was a longstanding paid informant for the Little Rock Police Department. This failure to disclose, whether inadvertent or intentional, is a clear violation of *Brady v. Maryland,* 373 U.S. 83 (1963). The question is whether this *Brady* violation warrants habeas corpus relief. Mr. Harris claims that when the reliability of a witness may be determinative of guilt or innocence, the nondisclosure of evidence affecting the credibility of that witness justifies a new trial. The standard is succinctly stated in *Dye v. Stender*, 208 F.3d 662, 665 (8th Cir. 2000):

> The interest of the government "in any criminal prosecution 'is not that it shall win a case, but that justice shall be done.'" *Lingle,* 195 F.3d at 1026 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). "For this reason ... the prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment," a rule known as the *Brady* rule. *Id.; see Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Evidence that "impeach[es] the credibility of a government witness ... falls under the *Brady* doctrine." *United States v. O'Conner,* 64 F.3d 355, 358 (8th Cir.1995). To establish a violation of *Brady,* a defendant must show that: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material. *See Johns v. Bowersox,* 203 F.3d 538, 545 (8th Cir.2000). A *Brady* violation will not necessarily result in reversal of the conviction if it was "not prejudicial and amount[s] to harmless error." *United States v. Williams,* 194 F.3d 886, 889 (8th Cir.1999).

The first two prongs set forth in *Dye v. Stender* are satisfied by the petitioner; the prosecution failed to disclose that Johilda Harris was a paid informant, and that information was favorable to Eddy Stanley Harris, Jr. However, the petitioner must also prove the third prong of the analysis – that the evidence suppressed was material – in order to warrant habeas corpus relief. "Evidence is considered material when a reasonable probability exists that, 'had the evidence

---

[2]Petitioner's father, Eddy Stanley Harris, Sr., testified at the Rule 37 hearing that Johilda Harris had, at one point, told him that Detective Ronnie Smith would give her $20,000.00 to testify that petitioner committed the crimes, and that she would give petitioner's father $5,000.00 of that sum. Ex. I 316. The credibility of Harris, Sr., is called into question by this testimony as there is no explanation of why petitioner's father would be interested in framing his own son, or why petitioner's aunt would believe petitioner's father would have such an interest.

been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. O'Conner*, 64 F.3d 355, 358 (8th Cir. 1995).

The first claim of Mr. Harris, as well as his second and third claims, hinge upon the question of whether the result of the trial would have been different had the defense been told that Johilda Harris was a longtime paid informant of the Little Rock Police Department. We find the outcome of the trial would not have been changed. A review of the trial transcript shows ample evidence of the petitioner's guilt was adduced without the testimony of Johilda Harris. We disagree with Mr. Harris's characterization of Johilda's testimony as the "crux of the State's case." Docket entry no. 33, page 6. Instead, the Arkansas Supreme Court was more on target when it described her testimony as cumulative to that of other witnesses, "not so critical," and "not crucial." *Harris v. State*, 2010 WL 5059552 (Ark. Dec. 9, 2010). A careful review of the trial transcript shows that petitioner's conviction stood on the testimony of numerous witnesses, as well as upon the taped conversation between the petitioner and his father in which the petitioner concedes that he may have told another witness that petitioner committed the crime. (Tr. 863-866). The Arkansas Supreme Court ably sets forth the evidence of petitioner's guilt in the opinion on direct appeal. *Harris v. State*, 366 Ark. 190 (2006). We conclude that no prejudice accrued to Mr. Harris despite the prosecution's *Brady* violation. As a result, we find no merit to the first claim advanced by the petitioner.

For his second claim, Mr. Harris alleges that the December 9, 2010, decision of the Arkansas Supreme is contrary to or involved an unreasonable application of *Giglio v. United States*, 405 U.S. 150 (1972), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1942). According to Harris, these cases stand for the proposition that when the reliability of a witness may be determinative of guilt or innocence, the nondisclosure of evidence affecting the credibility of that witness justifies a new trial, irrespective of the good faith or bad faith of the prosecution. This claim is without merit, based upon the same reasoning set forth when addressing the petitioner's initial claim for relief. There is no dispute on the law which

applies to the facts of this case; when a *Brady* violation occurs, habeas relief is available if the error was prejudicial. The Arkansas Supreme Court cited the law correctly in the opinion dated December 9, 2010, noting that a petitioner must prove the following to establish a *Brady* violation: " (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued." The Court continued: "To merit relief, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial." *Harris v. State*, 2010 WL 5059552 (Ark. Dec. 9, 2010). Having correctly stated the law, the remaining question is whether the Arkansas Supreme Court's decision was contrary to the law or an unreasonable application of it. For the reasons set forth in our analysis of ground one, we find the state court's ruling was neither contrary to or an unreasonable application of the law. Instead, we agree that the outcome of the trial would not have changed had the prosecution fully complied with *Brady*.

The final claim of Mr. Harris is that the December 9, 2010, decision of the Arkansas Supreme is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. We have carefully reviewed the trial transcript and the Rule 37 transcript, and find the ruling of the Arkansas Supreme Court was not unreasonable in light of the evidence presented in the state courts. The essence of the case relates to the value of Johilda Harris's testimony. The petitioner describes her testimony as crucial, while the respondent notes the Arkansas Supreme Court characterized Johilda's testimony as of much lesser value. We find no error in the Arkansas Supreme Court's evaluation of Johilda Harris's testimony. The record supports this conclusion. There is no merit to the third claim of the petitioner.

In summary, the three claims advanced by Mr. Harris are interrelated in that they all focus on the testimony offered by Johilda Harris and the failure of the prosecution to reveal that

Johilda had a longstanding relationship as a paid informant for the Little Rock Police Department. The petitioner alleges but does not prove that Johilda Harris was promised payment for her testimony in this case. Nevertheless, Johilda Harris and three other witnesses were indeed compensated *after* the trial. The prosecution violated *Brady v. Maryland* by failing to reveal Johilda's status as a paid informant, information that could have been used to impeach her motives for testifying. This violation, however, was not prejudicial to petitioner since we find the outcome of the case would not have changed if the prosecution had provided the information. As a result, we recommend that the petition for writ of habeas corpus be dismissed, and the requested relief be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this  12  day of July, 2011.

_____
UNITED STATES MAGISTRATE JUDGE